**In the Matter of Daniel HAMMONDS, Janice Hammonds aka Janice Mullins, Debtors.**

**Bankruptcy No. 1–82–01069.**

United States Bankruptcy Court, S.D. Ohio W.D.

Feb. 22, 1983.

Steven E. Simon, Cincinnati, Ohio, for the Debtors.

Timothy J. Hurley, Cincinnati, Ohio, for Capital Savings & Loan.

RANDALL J. NEWSOME, Bankruptcy Judge.

This is a Chapter 7 case in which debtor filed an application for redemption of items of personal property pursuant to 11 U.S.C. § 722. The parties have stipulated that the value of the property involved is approximately $600.00. Debtor alleges, however, that the sales contract for such property is void pursuant to Ohio Revised Code § 1317.06 of the Retail Installment Sales Act (RISA), thereby rendering the security interest and debt owed to creditor, Capital Savings & Loan Co., unenforceable pursuant to O.R.C. § 1317.08 and entitling the debtors to retain such property without payment thereon.

The question presented in this proceeding is whether under Ohio law, sales tax may be included in the indebtedness financed in a retail installment sales contract, where such taxes are fully disclosed in the contract.

The resolution of this issue requires an examination of the legislative purpose and substantive provisions of RISA. As was noted in *Teegardin v. Foley,* 166 Ohio St. 449, 143 N.E.2d 824 (1957), the purpose for enacting RISA was to prevent the inclusion of hidden charges in retail installment contracts, to compel full disclosure to consumers of all pertinent provisions of such contracts, and to control the rate of finance charges.

One of the principal mechanisms for achieving these legislative goals is found in § 1317.04, which requires all retail installment sales contracts to set forth a) the "cash price", b) the amount of the buyer's cash downpayment, c) the difference between the cash price and downpayment, d) the amount of any insurance subject to finance charges, e) the "principal balance", which consists of the sum total of (c) and (d) above, f) the applicable finance charges, and g) the "time balance", which consists of the total amount owed after adding the finance charge to the principal balance. The finance charge may not exceed the rates prescribed by §§ 1317.06 and 1317.061. With the exception of a nominal service charge, no other charges may be added to the retail installment contract in excess of the time balance, but the contract

"... may evidence in addition any agreements of the parties for the payment of delinquent charges ... taxes, and any lawful fee actually paid out, or to be paid out, by the retail seller to any public officer for filing, recording, or releasing any instrument..."

The debtors argue that a retail seller contracts for an illegal charge in violation of § 1317.06, where it includes in the principal balance a charge—in this case, state sales tax—other than one specified in § 1317.04(E), and imposes a finance charge on such additional charge. In other words, while § 1317.07 allows a seller to set forth in the contract the amount of sales tax incurred on the purchase, debtors contend that § 1317.06 forbids the seller from including the tax in the amount subject to

finance charges. They rely principally upon *Levine v. M. Baldwin,* 23 O.O.3d 436 (Ham. Cty.Mun.Ct., 1981) and *Levine v. J. Baldwin,* Case No. 81 CV 06359, (Ham.Cty.Mun. Ct., 1982) as support for their argument. Those cases hold that the principal balance in a contract may include only the cash price of the goods purchased and the cost of any insurance the retail buyer has agreed to procure. The judges in both *Levine* decisions viewed sales tax as a charge not encompassed by the definition of principal balance, and accordingly ruled that finance charges could not legally be charged on sales tax.

Because neither of the *Levine* decisions addressed the issue of whether sales tax is a part of the "cash price", and because we view this as the dispositive issue in this case, we respectfully decline to follow the *Levine* decisions.[1] Our analysis of this issue begins with the specific language of § 1317.01(K):

"Cash price" means the price measured in dollars, agreed upon in good faith by the parties as the price at which the specific goods which are the subject matter of any retail installment sale would be sold if such sale were a sale for cash to be paid upon delivery instead of a retail installment sale.

While this statute speaks only of the price of the "goods being purchased", we believe that it was intended to encompass the sales tax which a cash buyer would be required to pay on the purchase. Thus, since sales tax is a part of the "cash price", it is also a part of the "principal balance" and may be subject to a finance charge by the seller.

The language of § 1317.07 provides ample support for this conclusion, since it permits agreements for the payment of ". . . taxes, and fees payable to public officers for filing. . ." to be set forth in the contract. This section has been interpreted as

permitting any lawful charge to be included in the agreement so long as it is not specifically prohibited by the statute. *In Re Walters,* 17 B.R. 644 (Bkrtcy.S.D.Ohio 1982) (Perlman, J.) (potential charge for attorneys' fees permissible under § 1317.07). The holding of *In Re Walters, supra,* is entirely consistent with the Ohio Supreme Court's decision in *Domestic Credit Corp. v. Vazquez,* 69 Ohio St.2d 527, 433 N.E.2d 190 (1982), in which the Court found that a retail installment agreement which provided for the acceleration of principal and interest upon default did not violate § 1317.-06:

Clearly, this section does not preclude acceleration of interest as well as principal in the event of default. Nor should we imply such a preclusion into the Act, by an act of judicial legislation, . . . In determining legislative intent of a statute a court must not insert words not used . . . . To find for appellees would be to write a substantive amendment into the Act which is solely within the province of the General Assembly.

69 Ohio St.2d at 530–531, 433 N.E.2d 190.

In the absence of any statutory prohibition against levying a finance charge upon sales tax, the above-quoted language applies with equal force to this case.

Finally, the debtors argue that by charging a finance charge on sales tax, the creditor violated Ohio Revised Code § 5739.-01(H), which states in pertinent part that, ". . . no person other than the state . . . shall derive any benefit from the collection or payment of such tax." The debtors have failed to cite any citations of authority in support of their argument, and we have found none.

From our review of the statute, we conclude that § 5739.01(H) was not intended to provide a cause of action to the debt-

---

1. Contrary to debtors' assertions, we are not bound to follow the *Levine* decisions in our determination of this case. While those decisions certainly should be accorded some weight, a federal court in a nondiversity case is not bound by a ruling of a state trial court "where the highest court of the state has not

spoken on the point." *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *See also, San Francisco Real Estate v. J.A. Jones Const. Co.,* 524 F.Supp. 768 (S.D.Ohio 1981); *Olivera v. State Farm Mut. Auto Ins. Co.,* 451 F.Supp. 889 (E.D. Mich.1978).

ors under these circumstances. Indeed, the statute appears to be aimed at preventing the wrongful retention of taxes lawfully due the state which a vendor has actually collected from consumers. *See, Decor Carpet Mills, Inc. v. Lindley,* 64 Ohio St.2d 152, 413 N.E.2d 833 (1980); *Russo v. Donahue,* 10 Ohio St.2d 201, 226 N.E.2d 747 (1967). Since nothing in the statute or case law authorizes this Court to afford debtors the remedy they seek, their argument must be rejected.

For all of the reasons stated above, debtors' motion to redeem property without paying the amount of the creditor's allowed secured claim is hereby DENIED. Pursuant to 11 U.S.C. § 722, the debtors shall have 60 days from the date of this order in which to redeem the property by way of appropriate payment to the creditor.

IT IS SO ORDERED.