GIER v AUTO-OWNERS INSURANCE COMPANY

Docket No. 218716. Submitted October 10, 2000, at Grand Rapids. Decided January 16, 2001, at 9:10 A.M. Leave to appeal sought.

Marian P. Gier, as personal representative of the estate of Velma Mae Brooks Perrin Carothers, brought an action in the Hillsdale Circuit Court against Auto-Owners Insurance Company, seeking the $255 that the defendant had offset against its maximum liability for the decedent's funeral and burial expenses under the personal protection insurance provisions of a no-fault automobile insurance policy it had issued to the decedent. The setoff was for the death benefit provided under social security, 42 USC 402(i). The court, Michael R. Smith, J., granted summary disposition for the defendant, ruling that the setoff was proper under subsection 3109(1) of the no-fault act, MCL 500.3109(1); MSA 24.13109(1), which allows insurers to subtract from personal protection insurance benefits for an injury any benefit provided or required to be provided under the laws of any state or the federal government for the same injury. The plaintiff appealed.

The Court of Appeals *held*:

The test for determining whether a state or federal benefit can be offset from personal protection insurance benefits pursuant to subsection 3109(1) is whether the state or federal benefit serves the same purpose as the no-fault benefit and results from the same accident. In this case, the dispute centers on whether the social security death benefit serves the same purpose as the no-fault benefit for funeral and burial expenses. The two benefits do not serve the same purpose. The federal statute is clear on its face that the death benefit is not intended to pay for the burial of the decedent. Nothing in the statute mentions funeral expenses, and beneficiaries are not required to make any proof that the payment would be used for such expenses. The no-fault benefit, on the other hand, is strictly intended to defray the costs of burial.

Reversed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — FUNERAL AND BURIAL EXPENSES — SOCIAL SECURITY DEATH BENEFIT.

A no-fault insurer may not offset the social security death benefit payable to an insured's survivor against the insurer's personal protec-

tion insurance liability for expenses incurred for the funeral and burial of the insured (42 USC 402[i]; MCL 500.3109[1]; MSA 24.13109[1]).

*Arvid Perrin,* for the plaintiff.

*Dykema Gossett·PLLC* (by *Lori M. Silsbury* and *John M. Brown*), for the defendant.

Before: FITZGERALD, P.J., and HOOD and MCDONALD, JJ.

MCDONALD, J. Plaintiff appeals as of right from a court order granting summary disposition to defendant insurer. The trial court found that defendant was entitled to offset the payment of a $2,000 funeral expense liability by $255, the death benefit offered by social security under 42 USC 402(i), resulting in a net payment to plaintiff of $1,745. We reverse.

The Social Security Act, 42 USC 301 *et seq.,* includes a death benefit payment of $255 to the surviving spouse or dependents of the decedent. 42 USC 402(i). The relevant text of 42 USC 402(i) reads:

Upon the death . . . of an individual . . . an amount equal to three times such individual's primary insurance amount . . . or an amount equal to $255, whichever is the smaller, shall be paid in a lump sum to the person, if any, determined by the Commissioner of Social Security to be the widow or widower of the deceased and to have been living in the same household with the deceased at the time of death. If there is no such person, or if such person dies before receiving payment, then such amount shall be paid—

(1) to a widow (as defined in section 416(c) of this title) or widower (as defined in section 416(g) of this title) who is entitled (or would have been so entitled had a timely application been filed), on the basis of the wages and self-employment income of such insured individual, to benefits

under subsection (e), (f), or (g) of this section for the month in which occurred such individual's death; or

(2) if no person qualifies for payment under paragraph (1), or if such person dies before receiving payment, in equal shares to each person who is entitled (or would have been so entitled had a timely application been filed), on the basis of the wages and self-employment income of such insured individual, to benefits under subsection (d) of this section for the month in which occurred such individual's death.

Under the automobile insurance policy written by defendant, plaintiff was to receive up to $2,000 for reasonable funeral and burial expenses. Expenses paid by no-fault personal protection insurance (PIP) benefits must be actually incurred for defendant to be held responsible for them. *Booth v Auto-Owners Ins Co*, 224 Mich App 724, 727; 569 NW2d 903 (1997). Under the no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, an insurer may subtract from the amount to be paid benefits provided or required to be provided under the laws of any state or the federal government. MCL 500.3109(1); MSA 24.13109(1). The parties agreed that defendant is allowed to subtract benefits paid by governmental agencies that are duplicative, and that our Supreme Court in *Jarosz v DAIIE*, 418 Mich 565; 345 NW2d 563 (1984), set forth the test for trial courts to use in determining when such benefits could be subtracted by the insurer. The *Jarosz* test for determining whether a state or federal benefit could be offset is whether the benefit both serves the "same purpose as the no-fault benefits" and results from "the same accident." *Id.* at 577. The parties further agreed that the "same accident" criterion was established. Thus, the only question is whether 42 USC 402(i) serves the

same purpose as the no-fault funeral and burial expenses.

We must determine whether Congress intended for the lump-sum death payment under subsection 402(i) to assist the survivors with funeral and burial expenses. The first step of statutory interpretation is to discern the intent of the Legislature by considering the statutory language employed. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000). The statutory language is to be "read according to its ordinary and generally accepted meaning," and judicial construction is not permitted where the language is clear and unambiguous. *Id.*

We note that the above referenced language of subsection 402(i) does not mention funeral or burial expenses whatsoever. The only reference to burial appears in the second paragraph, which extends the period for requesting the lump-sum payment in cases where the decedent was in the armed services and died in a foreign country. In such cases, the period starts to run when the body is returned to the United States for burial. The phrase "interment or reinterment" in that provision is used only to denote a period within which the request for the payment must be made; it places no restrictions on how the payment is to be spent. Therefore, nothing in the current statute indicates that the $255 payment is for funeral and burial expenses. The statutory language is unambiguous, making further judicial construction unnecessary. *Cherry Growers, supra* at 166.

Defendant insists that a careful examination of the extensive legislative history of the death benefit statute reveals that the intent of Congress was to provide

for funeral and burial expenses. Although the 1960 and 1971 versions of the statute expressly allowed the payer of the funeral expenses to receive the lump-sum payment in cases where there was no surviving spouse or dependents, this is no longer permitted, despite the actual incurrence of funeral expenses. Furthermore, a spouse or dependent receiving the benefit has never been required to show that funeral expenses were incurred or even that the decedent was buried at all. While it is certainly possible that the payment would be used for funeral expenses, nothing in the statute imposes such a requirement. In *Jarosz*, our Supreme Court cautioned that "[i]f an inappropriately generalized notion of purpose or legislative intent is used, it might be concluded that almost any governmental benefit can be seen as duplicating no-fault benefits." *Jarosz*, *supra* at 580.

*Jarosz* provides further guidance to our determination whether the two benefits serve the same purpose by identifying the events triggering entitlement as one of the factors signifying similarity of purpose. *Id.* In this case, the two benefits are not triggered by the same event. The no-fault payment is triggered by the funeral and burial of the decedent; proof of expenses incurred by the recipient is required. The lump-sum payment, on the other hand, is triggered by the death of an insured person who leaves eligible survivors; no funeral or burial is required, and the payment would be made even if there were no remains to be buried.

The federal statute is clear on its face that the lump-sum death payment is not intended to pay for the burial of the decedent. Nothing in the statute mentions funeral expenses, and beneficiaries are not required to make any proof that the payment would

be used for such expenses. The no-fault payment, on the other hand, is strictly intended to defray the costs of burial. These two payments do not serve the same purpose; therefore, under *Jarosz*, defendant may not decrease its liability by subtracting $255 from its obligation.

Reversed.